THOMAS B. CHOINIERE V. THE STATE.

No. 23715. Delivered June 25, 1947.
Reheading Denied October 22, 1947.

*George S. McCarthy* and *Clem Calhoun,* both of Amarillo, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of robbery by assault and assessed a term of five years in the penitentiary.

This conviction was had under the law of principals and is supported by the evidence.

There is but one complaint brought forward in the brief and that is concerned with Bill of Exception No. 2. In that bill,

it is shown that while the jury was deliberating on their verdict, the question of their granting a suspension of sentence evidently arose. Under the law, a conviction for robbery by assault cannot be suspended on account of the statute (Art. 776, C. C. P.) not granting such in cases of robbery. It is shown by the testimony of some of the jurors that they were discussing a suspension of sentence at one period of time during their deliberations. Less Whitaker, a deputy sheriff, was in charge of the jury and was waiting outside the closed door of the jury room. We quote his testimony heard on the motion for a new trial as follows:

"While the jury were deliberating on their verdict, I was there in the hall, and a knock came on the door of the jury room; I opened the door and put my head in, and two or three of the jurymen were standing up, and Mr. Craig, I think, was foreman of the jury, and he was standing near the front, and some of the others were standing up, and I think it was Mr. Craig that said, 'Can this jury give a suspended sentence?' and I said 'No', and I slammed that door shut.

"That was the extent of that conversation. I said it was Mr. Craig that asked that question, I thought—anyway, it was one of those jurymen; I remember seeing a crowd standing there, and that is the reason I think it was the foreman who asked me the question, but it could have been some of the other jurymen, but I think Mr. Craig was the one. Anyway, someone in that juryroom asked me that.

"I do recall that there was a knock on the door, and that I responded to the knock, like I always do when the jury may want information. Of course, I realized I had done wrong as soon as I did that. It made me mad, and I just said, 'No', and I shut that door, and I knew I had done something.

"I did not come down and see the judge about this matter, nor did the judge send any message by me about the suspended sentence law, or anything, to the jury."

Some of the jurors did not recall the proceeding above testified to by Mr. Whitaker. Mr. Craig, the foreman, testified that he did not remember any such incident, although it possibly could have happened. At least, two of the jurors testified that they sent out for the bailiff to find out whether they could suspend the sentence, and word came back that they could not. These two jurors were the last two to agree to a conviction.

The trial court qualifies this bill in that from the evidence he found the facts against the purport of these two jurors' testimony which intimated that the deputy sheriff may have been requested to come to the judge and ask him whether the jury could recommend a suspended sentence; that Mr. Whitaker never came to him (the judge) with any such statement, suggestion, or request from the jury or any member thereof for such advice, and he sent no message or word whatever by the bailiff to the jury on that or any other subject.

We are cited to Art. 676, C. C. P., relative to the procedure when a jury desires to communicate with the court, and the direction therein as to what and how they shall make such desire known. We find no such request shown herein.

Again, we are cited to Art. 677, C. C. P., relative to the jury, after retirement, asking further instructions of the judge on any matter of law and how they shall appear in a body before the court. We find no such request made of the court for such further instructions.

And again, we are cited to Art. 679, C. C. P., which requires the presence of the defendant, as well as the calling of his counsel, in felony cases when the jury appears in court and desires instruction as provided for in Arts. 676 and 677, supra.

We are cited to many cases holding that in the event the jury does communicate with the court as suggested in such of the statutes mentioned above, it is necessary for the defendant to be present, and his presence thereat cannot be waived by his attorney as is shown, among others, in the late case of White v. State, 195 S. W. (2d) 141, and cases there cited.

The difficulty found herein of applying this line of decisions lies in the fact that there was no communication with the trial judge, and probably none attempted. No one testified that the jury asked to be brought before him and enlightened as to matters of law, but merely that some one knocked on the door of their room, and upon the same being opened by the officer in charge of the jury, he was asked whether or not this jury could give a suspended sentence, to which question the officer answered "No", and closed the door, and that this closed the incident. No further communication of any kind is shown in the record.

Evidently the statement of the deputy sheriff was correct, the statute not allowing a suspension of sentence in robbery

cases; and the matter, if error, was harmless and could not have possibly injured appellant in any way. He obtained the lowest penalty allowed by law, and the mere fact that he could not receive a suspended sentence could not have in any way contributed to his conviction. This was but a mere conversation with a deputy sheriff whom the law placed in charge of the jury, and the information given them by him was patent and open had they carefully read the trial court's charge. A different matter would present itself to us had it been in the power of the jury to award a suspended sentence, but such is not here presented. Of course, this proceeding is not to be commended, but should be condemned.

This is the only question presented in the record and brief, and believing the same, if error, to be a harmless one, the judgment will be affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant stresses the concluding clause of Art. 673 C. C. P. regarding the duty of an officer in charge of a jury, to-wit:

"* * * nor shall such officer, at any time while the case is on trial before them, converse about the case with any of them, nor in the presence of any of them."

It is appellant's contention that the record shows a violation of this mandatory provision of the statute, and that injury will be presumed. If this be granted, it is thought our original opinion demonstrates that such presumption was entirely overcome in the present instance, and shows that no possible harm could have resulted from the incident. Whether the trial court punished the officer, or should have done so, is a matter not before us, and about which the record is silent.

The motion for rehearing is overruled.